Saleem SHAH, a/k/a Bernard Thomas

v.

MetPATH CORPORATION and
Alan Robbin.

Civ. A. No. 78–1195.

United States District Court,
E. D. Pennsylvania.

April 30, 1979.

Yale B. Bernstein, Philadelphia, Pa., for plaintiff.

Thomas J. Renehan, Jr., Philadelphia, Pa., for defendants.

## MEMORANDUM

LUONGO, District Judge.

Plaintiff, a former employee of defendant MetPath Inc., filed the original complaint in this civil rights action on April 11, 1978. He alleged that his employment was wrongfully terminated on the basis of his race (black) and/or his religion (Islamic or "Black Muslim"), and he sought relief under the Civil Rights Act of 1866, 42 U.S.C. § 1981 (1976) and the Civil Rights Act of 1871, 42 U.S.C. § 1985(c) (1976). Defendants filed their answer and then moved for summary judgment. I denied the motion, and I gave plaintiff thirty days in which to amend his complaint so as to meet the several objections raised by defendants. Plaintiff filed his amended complaint on January 31, 1979; defendants answered and then renewed their motion for summary judgment. For the reasons hereafter stated, I conclude that plaintiff's section 1981 claim is sufficient, albeit barely so, to withstand the motion at this time, but that plaintiff's section 1985(c) claim should be dismissed without prejudice for insufficiently specific pleadings.

The amended complaint alleges the following facts. Plaintiff was hired on March 11, 1976, to work as a driver at MetPath's Philadelphia office. On April 28, 1976, plaintiff had with him at work a copy of the *Bilalian News*, which is "the publication of the so-called 'Black Muslims' in the United States." Amended Complaint (Document No. 12) ¶ 5. Defendant Robbins, plaintiff's senior supervisor, who is white, asked to see the *Bilalian News*, and "read and perused" plaintiff's copy. *Id.* ¶ 6. Two days later, on April 30, 1976, "without prior notice or warning to plaintiff, he was discharged from his employment by defendant." *Id.* ¶ 7. Plaintiff had received no "formal criticism" of his job performance since April 9, and was, at the time of his discharge, performing his job satisfactorily. *Id.* ¶ 9. At the time he was discharged, plaintiff was the only black employed by defendant MetPath, and his position was "immediately" filled by a white person, "thereby making defendant's entire workforce Caucasian." *Id.* ¶ 8. Plaintiff was discharged "in whole or in part" because of his race. *Id.* ¶ 10. Plaintiff and other black employees "were discharged and/or disciplined for reasons which were not equally applied to or invoked against Caucasian employees, and for alleged violation [*sic*] of rules which were not equally applied to or invoked against its Caucasian employees." *Id.* ¶ 12. In addition, defendant MetPath "restricted the number of its employees who were black" and maintained "a policy of restricting the employment opportunities of blacks" at the company. *Id.* ¶ 11.

Based on the foregoing allegations, plaintiff asserts claims under section 1981 and under section 1985(c). Defendants challenge the sufficiency of both claims, and I shall consider these issues in turn.

## SECTION 1981

Section 1981 provides in pertinent part:

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . ."

Section 1981 "affords a federal remedy against discrimination in private employment on the basis of race." *Johnson v. Railway Express Agency*, 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975); *see, e. g., McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976).

Defendants advance three distinct arguments in support of their motion for summary judgment on the section 1981 claim. First, they contend that the amended complaint alleges *religious,* rather than *racial,* discrimination and that section 1981 does not proscribe religious discrimination in private employment. Second, they urge that a section 1981 plaintiff must prove *intentional* discrimination, and that plaintiff has failed to allege intent here. Third, they argue that the section 1981 claim is pleaded with insufficient factual specificity. Although there is considerable merit in several of defendants' contentions, they are not sufficiently persuasive to warrant entry of summary judgment at this stage of the proceedings.

■ To begin with, the amended complaint pretty clearly alleges *racial* discrimination in employment, although defendants have focused only on the *"Bilalian News* incident." Defendants reason that if Robbins' perusal of the Black Muslim newspaper in any way precipitated plaintiff's discharge, then that discharge was motivated by religious, rather than racial, discrimination and, because section 1981 does not proscribe religious discrimination by private employers, defendants seek summary judgment on the § 1981 claim. I need not determine at this time whether an employer who discharges a black employee solely because the latter is a Black Muslim would incur liability under section 1981. Suffice it to say that the amended complaint amply alleges racial, rather than religious, discrimination, as is shown by the allegations quoted earlier. Thus, defendants may not seize upon the *"Bilalian News* incident" in order to transform plaintiff's claim into a claim of religious discrimination. Should it appear upon a fuller record that plaintiff's claim of racial discrimination rests in part on the suggestion that defendant Robbins harbored some antipathy toward Black Muslims, that will be time enough to determine whether such an animus might amount to racial discrimination prohibited by section 1981.

■ Defendants also argue that *intentional* discrimination is an essential element of a section 1981 claim, and that plaintiff has nowhere alleged the requisite intent. The first half of this argument is well-taken: I have held on several occasions that liability under section 1981 requires intentional discrimination. *See, e. g., Milburn v. Girard,* 441 F.Supp. 184, 188 (E.D.Pa.1977). But it does not follow that a section 1981 plaintiff must plead the legal conclusion that "defendants intentionally discriminated on the basis of race" in order to survive a motion to dismiss. Instead, it is sufficient if the complaint contains allegations from which the requisite intent may reasonably be inferred. Here, for example, plaintiff alleges that MetPath "restricted the number of its employees who were black" and maintained "a policy of restricting the employment opportunities of blacks" at the company. Amended Complaint (Document No. 12) ¶ 11. These allegations, liberally read, describe a practice of intentional discrimination, as opposed to negligent or inadvertent discrimination. Accordingly, plaintiff's failure to specifically plead intentional discrimination is not fatal to his section 1981 claim.

■ Finally, defendants argue that the entire section 1981 claim is pleaded in such a vague and conclusory fashion that it fails to satisfy the specific pleading rule adopted by the Court of Appeals for the Third Circuit in civil rights cases. *See generally Kedra v. City of Philadelphia,* 454 F.Supp. 652, 675 & n.24 (E.D.Pa.1978) (collecting cases). I have previously set forth my understanding of the rule in these terms:

"The specific pleading rule does not require the plaintiff to plead all the evidence in support of [his] claim; it merely requires the pleading of allegations sufficient to assure the court that the claim has some basis in fact. If the claim merely parrots the language of the Civil Rights Act or sets forth a theory of recovery with no factual allegations in its support, dismissal is proper."

*Flesch v. Eastern Pa. Psychiatric Inst.,* 434 F.Supp. 963, 973 (E.D.Pa.1977) (citations omitted).

Although the amended complaint here is almost totally lacking in factual detail, I do not believe that the section 1981 claim is fatally deficient in this respect. Plaintiff alleges that he was the only black employed by defendant MetPath, that he was discharged at least in part because of his race, and that he was replaced by a white person. He also alleges that MetPath limited the number of blacks who worked for the company, and that it disciplined or discharged its black employees pursuant to rules that were applied in a racially discriminatory fashion. Taken together, these allegations suggest that plaintiff's claim of racial discrimination "has some semblance of factual support." *Kedra v. City of Philadelphia, supra,* 454 F.Supp. at 675. This is enough to satisfy the rule.

### SECTION 1985(c)

Plaintiff also asserts a claim under 42 U.S.C. § 1985(c) (1976), which provides in pertinent part:

"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

As I read the amended complaint, plaintiff charges a conspiracy to deprive him of (1) the right, secured by section 1981, to be free from racial discrimination in private employment, and (2) the right, secured by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–16 (1976), to be free from *religious* discrimination in private employment.

Defendants challenge the section 1985(c) claim on several grounds. First, they argue that plaintiff waived any rights secured to him by Title VII when he failed to file suit within 90 days after receiving his right-to-sue letter from the Equal Employment Opportunity Commission, so that he cannot now use section 1985(c) as a remedial vehicle for that waived right. *See generally Novotny v. Great Am. Fed. Sav. & Loan Ass'n,* 584 F.2d 1235, 1251–52 & n.86 (3d Cir. 1978) (en banc), *cert. granted,* 439 U.S. ——, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979). Second, they contend that any concerted action among officers and employees of defendant MetPath Inc. could not, as a matter of law, amount to a conspiracy actionable under section 1985(c), because it would be attributable to a single legal actor, the corporation, and a conspiracy cannot exist without a plurality of legal actors. *See generally Novotny v. Great Am. Fed. Sav. & Loan Ass'n, supra,* 584 F.2d at 1256–59; Note, *Intracorporate Conspiracies Under 42 U.S.C. § 1985(c),* 92 Harv.L.Rev. 470 (1978). Finally, defendants again invoke the specific pleading rule and urge that the section 1985(c) claim is deficient in this respect. I find this last argument persuasive, and so I need not address the other two.

I have already noted that the specific pleading rule "merely requires the pleading of allegations sufficient to assure the court that the claim has some basis in fact." *Flesch v. Eastern Pa. Psychiatric Inst., supra,* 434 F.Supp. at 973. With respect to plaintiff's section 1985(c) conspiracy claim, however, even this minimal requirement has not been met. In his original complaint, plaintiff alleged that "[d]efendant [Robbins] and other personnel, officers and employees of [defendant MetPath] conspired to discharge and/or to cause the discharge of plaintiff because of his race and religion." Complaint (Document No. 1) ¶ 8. At oral argument on defendants' first motion for summary judgment, plaintiff's counsel candidly admitted that the conspiracy averment was based entirely on "the fact that there is a racial pattern of an entire white work force which obviously

had to be known to persons other than [Robbins], his hierarchy." Transcript (Document No. 11) at 17. I observed that this was "a pretty flimsy reed" upon which to certify a conspiracy charge, which is what counsel did under Rule 11 when he signed the complaint. *Id.* 19. Yet when counsel drafted the amended complaint, he evidently concentrated on avoiding the intracorporate conspiracy doctrine and overlooked the specific pleading rule entirely. The amended allegations bearing on the conspiracy charge read as follows:

"19. Plaintiff believes and therefore avers in the alternative:

(a) That defendant MetPath Corporation and Defendant Robbins, conspired with each other and with other employees of MetPath Corporation (whose identity cannot be ascertained without the aid of discovery) to discrimination [*sic*] against plaintiff as aforesaid, and to limit the employment opportunities of [blacks] with defendant Corporation; and/or

(b) That the policy of Metpath Corporation to discriminate against plaintiff and other [blacks] as set forth above, was known to, fostered, accepted by and carried out by the officers of Metpath Corporation in conspiracy with its supervisory employees; and/or

(c) That the conspiracy by Robbins and other supervisory employees of Metpath to so discriminate was entered into and carried out whether or not such discriminatory practices and policies were known to, fostered by and/or knowingly accepted by defendant Corporation.

20. Plaintiff believes and therefore avers that, in addition to the above conspiracy to deprive plaintiff of his employment rights because of his race, as set forth above, such conspiracy was entered into and perpetuated to cause plaintiff's dismissal because of his religion, to wit, Black Islamic, as well as his race."

■ If the specific pleading rule means anything in this context, it surely means that such wide-ranging, disjunctive allegations of conspiracy are insufficient. In essence, plaintiff's claim is that MetPath officers or employees—*other than defendant Robbins*—conspired with Robbins to bring about plaintiff's discharge. Yet nothing in the amended complaint provides any factual basis whatever for this charge. The amended complaint refers to no one else at the company with whom plaintiff had any contact at all. It fails to mention, whether by name or by title, any other employees or officers with whom Robbins might have worked, or to whom he might have reported. It sheds no light at all on the chain of command with regard to personnel decisions. On the whole, it lends not even a semblance of factual support to plaintiff's conspiracy claim.

The proper remedy for this defect, however, is not the summary judgment that defendants seek. I will instead dismiss the section 1985(c) claim, without prejudice to plaintiff's right to reassert that claim should he later acquire sufficient information to plead it in the manner required by the controlling decisions in this circuit. Such information, of course, can only be acquired through discovery, which has not yet begun here, although plaintiff was discharged three years ago.

### ORDER

This 30th day of April, 1979, it is

ORDERED that Defendants' Motion for Summary Judgment is DENIED in all respects. It is

FURTHER ORDERED that Plaintiff's conspiracy claim under 42 U.S.C. § 1985(c) (1976) is DISMISSED without prejudice for failure to plead it with sufficient factual specificity.